ON MOTION FOR REHEARING
GERBER, J.
We deny S.W.’s motion for rehearing, and substitute the following for our No *656 vember 18, 2009 opinion to clarify the propriety of the juvenile court’s disposition.
The juvenile court adjudicated S.W. delinquent for her participation in a petit theft. Without further comment, we affirm the court’s denial of S.W.’s motion for judgment of acquittal. We also affirm the court’s departure from the Department of Juvenile Justice’s recommended disposition. We choose to address the departure issue in greater detail.
At the time of the offense, S.W. was seventeen years old. She was on juvenile probation for having committed misdemeanor battery, and on adult probation for having committed criminal mischief. In the past, she also received pretrial diversion for burglary of a dwelling.
Following the theft adjudication, and after accepting S.W.’s no contest plea for violating her probation on the battery and criminal mischief charges, the court held a disposition hearing. The Department’s pre-disposition report contained a comprehensive evaluation indicating that S.W. had psychiatric issues, suicidal ideations, and an extensive substance abuse history. The evaluation recommended that the court place S.W. in a highly-structured residential facility capable of handling her substance abuse issues. Based on the court’s review of the evaluation, the court commented that S.W. appeared to be an “out-of-control drug user who is lucky to be alive.” Nevertheless, the Department opined that S.W. was a low risk for re-offending or flight, and recommended that S.W. continue on probation, with the added special condition of residential drug treatment and aftercare. When the court challenged the Department’s representative as to how the Department could justify its recommendation in light of the evaluation’s recommendation, the representative responded, in pertinent part, “I cannot.”
The court rejected the Department’s recommendation. Instead, the court committed S.W. to a Level 8, high-risk program as to each of the three cases, with each disposition running consecutively to the others.[1] A high-risk program is, in pertinent part:
residential and do[es] not allow youth to have access to the community.... High-risk residential facilities are hardware-secure with perimeter fencing and locking doors.... Youth assessed and classified for this level of placement require close supervision in a structured residential setting. Placement in programs at this level is prompted by a concern for public safety that outweighs placement in programs at lower commitment levels.
§ 985.03(44)(d), Fla. Stat. (2007).
The court explained its reasoning for the high-risk program in great detail:
Number one, she’s been in a diversion program, that did not work. She’s been on juvenile probation, that did not work. She was the subject of a restraining order[,] she violated that, that did not work. She’s now on adult probation and none of these things have worked.
Her mother obviously loves her to death, but her mother has been unable to properly supervise her in the home[,] and that’s based on the record here before me. Probation is not the answer.
Last, but not least, the recommendation of probation is incredibly inconsistent with the well-documented and well-supported recommendations of the Comprehensive Evaluation[,] which states *657 ‘that [S.W.] should be placed in a highly structured residential facility capable of handling her substance abuse issues.
[[Image here]]
The Comprehensive Evaluation more than adequately supports a highly structured residential facility!,] and because of that recommendation, in part, I have chosen a high risk residential program, it is highly structured, it’s a program from which she cannot simply walk away at all.
The second reason why the Court has chosen a high risk as opposed to a Level 6 program, is because this child’s substance abuse problem is the most extensive one this Court has ever encountered ....
If I counted accurately, her substance abuse problem includes tobacco, alcohol, marijuana, cocaine, heroin, LSD, Extacy [sic], Roxycontin, Oxycontin, and Xanax, not to mention the fact that she overdosed and had to be hospitalized for her abuse of Xanax. The Level 8 commitment level will allow this child the maximum opportunity to once and for all address her substance abuse problem. Had the Court chosen probation[,] jurisdiction would end at 19.
If the Court had chosen a Level 6[,] jurisdiction would end at 19. A high risk residential program jurisdiction would not end until age 21 [,] and the child could continue until age 22 if that is necessary to complete her substance abuse [treatment].
Choosing a high risk residential program[,] the Court has virtually guaranteed that all of the recommendations of the Comprehensive Evaluation this child could benefit from[;] that is the only commitment level that’s available to the Court that would ensure those recommendations the child could benefit from....
Last, but not least, the Level 8 commitment will ensure that the child cannot, cannot leave the program if she chooses to, which the evidence and information contained in the Predisposition Report and the Comprehensive Evaluation seem to indicate [she would]. For those reasons I’ve chosen a high risk residential program.
S.W. filed a motion for rehearing, alleging that the evaluation upon which the court relied for the disposition contained numerous factual mistakes and was incomplete. At the resulting hearing, the court reserved ruling on the motion, but commented, “the decision I made I’m comfortable with because it kept this child alive.... I would never [have] agreed to pi’obation under these types of circumstances on these facts as they were presented to me at that time.” The Department then informed the court that placing S.W. into a Level 8 program would not provide the intensive drug treatment which the court felt S.W. needed. Instead, the Level 8 program would provide only “overlay service” for the substance abuse. According to the Department, a Level 6 program would provide a true substance abuse component. After considering this information, the court responded, “she’s not placed in a Level 8 program for punishment- [S]he’s there for treatment. ... [If] she’s not going to be getting treatment in this programf,] I need to know about that.... It will affect my decision.”
Shortly thereafter, the court entered an order denying the motion for rehearing. The record does not indicate whether the Department ever followed through on the court’s direction to notify the court if S.W. would not be getting appropriate treatment in the Level 8 program.
This appeal followed. S.W. argues the juvenile court erred in departing from the *658 Department’s recommendation to continue probation. According to S.W., competent, substantial evidence did not exist to support a Level 8, high-risk residential commitment. S.W. contends the evidence showed the majority of her drug use was two years earlier and she already began voluntary treatment. S.W. also alleges that, even if the court’s concern for intensive drug treatment was accurate, the evidence showed a Level 8 program would not provide such treatment.
Our review of the juvenile court’s departure from the Department’s recommendation is two-pronged: (1) whether the juvenile court employed the proper legal standard in providing its on-the-record departure reasons; and, if so, (2) whether its stated reasons are supported by a preponderance of the competent, substantial evidence contained within the record. E.A.R. v. State, 4 So.3d 614, 638-39 (Fla.2009). Regarding the proper legal standard, the juvenile court must satisfy the following criteria:
(1) Articulate an understanding of the respective characteristics of the opposing restrictiveness levels including (but not limited to) the type of child that each restrictiveness level is designed to serve, the potential “lengths of stay’ ” associated with each level, and the divergent treatment programs and services available to the juvenile at these levels; and
(2) Then logically and persuasively explain why, in light of these differing characteristics, one level is better suited to serving both the rehabilitative needs of the juvenile — in the least restrictive setting — and maintaining the ability of the State to protect the public from further acts of delinquency.
Id. at 638.
Here, even though the juvenile court rendered its decision before the supreme court issued E.A.R., the juvenile court satisfied E.A.R.’s criteria.
The juvenile court articulated an understanding of the respective characteristics of the opposing restrictiveness levels including the type of child that each restrictiveness level is designed to serve. The court recognized that a high-risk program was justified for a child who had been in a diversion program, on probation, and under parental supervision, of which none “have worked.” The court also acknowledged that a high-risk program, unlike probation, is a “highly structured residential facility ... from which [a child] cannot simply walk away.” The court also expressed that a high-risk program was justified for a child who, based on her history, would attempt to “leave the program.”
The court also articulated an understanding of the potential “lengths of stay” associated with each level. The court stated, “Had the Court chosen probation!]] jurisdiction would end at 19. If the Court had chosen a Level 6[J jurisdiction would end at 19. A [Level 8] high risk residential program jurisdiction would not end until age 21 [,] and the child could continue until age 22.”[2]
The court further articulated an understanding of the divergent treatment programs and services available to the juvenile at these levels. At the disposition hearing, the court initially appeared to believe a Level 8 program would provide the intensive substance abuse treatment which the court desired. The Department then informed the court at the rehearing that a Level 8 program would provide only overlay services. Having heard that information, the court instructed the Department, “[if] she’s not going to be getting treatment in this program[,] I need to know *659 about that.” The record does not indicate whether the Department ever followed through on the court’s direction to notify the court if S.W. would not be getting appropriate treatment in the Level 8 program.
The court logically and persuasively explained why, in light of these differing characteristics, a high-risk program was better suited to serving S.W.’s rehabilitative needs — in the least restrictive setting — while maintaining the state’s ability to protect the public from further delinquent acts. Although the Level 8 program’s overlay services would not provide the most intensive substance abuse treatment which the court desired, jurisdiction for the Level 8 program would not end until S.W. turned twenty-one, and S.W. could continue the program until age twenty-two if necessary to complete any treatment. On the other hand, jurisdiction for probation or a Level 6 program would end when S.W. turned nineteen, and S.W. already had turned eighteen by the time of the commitment. Thus, the court decided it was in S.W.’s best interests to place the length of treatment over the intensity of treatment. S.W.’s psychiatric and substance abuse history, which the court found credible, served as competent, substantial evidence for that decision.
Even if the court erred in reasoning that a Level 8 program was appropriate to address S.W.’s substance abuse problem, the court described that problem as only the “second reason” why the court chose the Level 8 program. The “number one” reason for the court’s choice was its desire to place S.W. in a “highly structured” program from' which she “cannot leave the program if she chooses to, which the evidence and information ... seem to indicate [she would].” Thus, the trial court found that S.W. was a flight risk, and that “[keeping] this child alive” was of highest priority. The fact that neither diversion, probation, nor parental supervision “have worked” to control S.W.’s self-destructive behavior served as competent, substantial evidence for that decision.
In sum, the court employed the proper legal standard in providing its on-the-record departure reasons. The court’s stated reasons also are supported by a preponderance of the competent, substantial evidence contained within the record. Therefore, the trial court satisfied its duty to determine the most appropriate disposi-tional services in the least restrictive available setting.

Affirmed.

POLEN and STEVENSON, JJ., concur.

. As the court recognized, each of the three offenses carried a maximum one-year term of imprisonment, meaning that the total amount of time which S.W. could spend in a commitment program could not exceed three years.

. See footnote 1, supra.